**IMMIGRATION ASSISTANCE PROJECT OF THE LOS ANGELES COUNTY FEDERATION OF LABOR, et al., Plaintiffs,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants.**

No. C88–379R.

United States District Court, W.D. Washington.

March 7, 1989.

Robert H. Gibbs, Seattle, Wash., for plaintiffs.

Donald Keener, U.S. Dept. of Justice, Office of Immigration Litigation, Civil, Washington, D.C., for defendants.

**ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION TO DISMISS**

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on plaintiffs' motion for summary judgment and defendants' second motion to dismiss or in the alternative for summary judgment. Having reviewed the motions, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. FACTS

On November 4, 1988, this court granted in part and denied in part defendant Immigration and Naturalization Service's ("INS") motion to dismiss. *See* Order Granting In Part and Denying In Part Defendants' Motion to Dismiss ("Order"). The court dismissed plaintiffs' claim for an extension of the deadline for legalization applications under the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1255a, as well as those claims decided in *Ayuda, et. al. v. Meese, et. al,* 687 F.Supp. 650 (D.D.C.1988) that the INS did not appeal.

In addition, the court ruled that since plaintiffs' amended complaint failed to allege that the individual named plaintiffs submitted timely applications for legalization, these individual plaintiffs lacked standing. In a companion order, the court denied plaintiffs' motion for class certification. *See* Order Denying Plaintiffs' Motion for Provisional Class Certification.

The court did not dismiss the suit, ruling instead that the various organizational plaintiffs had standing in their own right to seek relief from the INS's regulations and practices. The court held that it had jurisdiction over plaintiffs' amended complaint and that plaintiffs' claims were ripe for adjudication, but questions of fact precluded summary judgment. The parties have subsequently taken depositions and exchanged discovery materials. Plaintiffs now move for summary judgment, and defendants move to dismiss or in the alternative for summary judgment.

## II. DISCUSSION

### A. Standard For Summary Judgment

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d 626, 630–631 (9th Cir.1987); *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). Summary judgment is not appropriate if "a result other than that proposed by the moving party is possible under the facts and applicable law." *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir.1981).

### B. Background

To define the eligibility of nonimmigrants for legalization, Congress adopted 8 U.S.C. § 1255a(a)(2)(B), which provides that:

> [i]n the case of an alien who entered the United States as a nonimmigrant before January 1, 1982, the alien must establish that the alien's period of authorized stay as a nonimmigrant expired before such date through the passage of time or the alien's unlawful status was known to the Government as of such date.

8 U.S.C. § 1255a(a)(2)(B). The United States District Court for the District of Columbia in *Ayuda v. Meese* rejected the INS's restrictive definition of the phrase "known to the Government". *Ayuda,* 687 F.Supp. at 660–66.

The *Ayuda* court held that to prove an alien's unlawful status was known to the government,

> a nonimmigrant alien must establish that prior to January 1, 1982, documentation existed in one or more government agencies so that such documentation taken as a whole would warrant the finding that the non-immigrant alien's status in the United States was unlawful.

*Id.* at 666 (supplemental order). Plaintiffs here challenge the INS's application of the

*Ayuda* standard to three categories of applicants and as a consequence, plaintiffs' arguments present technical variations on the issues first discussed in *Ayuda*.

### C. Section 265 Applicants

■ Prior to 1982, section 265 of the Immigration and Naturalization Act required all aliens residing temporarily in the United States to report their addresses to the INS each quarter or each year. *See* 8 U.S.C. § 1305. If an alien willfully failed to register his or her address, the INS could seek criminal penalties as well as deportation. In its prior order, this court held that violations of section 265 were not merely technical, but rather made an alien's status unlawful and therefore eligible for legalization under the "known to the government" standard.[1] *See* Order at 17; *Ayuda*, 687 F.Supp. at 668 (supplemental order V).

Plaintiffs contend that in spite of this and other courts' rulings, the INS refuses to approve section 265 applicants. The INS, according to plaintiffs, gives the formal explanation that it is holding these applications in abeyance while litigation continues. *See* Deposition of Terrance O'Reilly at A2, exhibit A to Plaintiffs' Reply Memorandum in Support of Summary Judgment. Informally, however, INS agents have allegedly told the directors of various plaintiff organizations that section 265 applications will be denied. *See* Plaintiffs' Memorandum in Opposition at 4.

In response, the INS contends that it has no such policy. The previous stance of the INS, that violations of section 265 were technical and did not entitle an alien to legalization, was a "litigation position" which the INS has abandoned. The INS does not contest that it is holding section 265 applications in abeyance, arguing instead that it has decided to process these applications case-by-case. Finally, the INS

renews its objection to judicial review on the grounds that the legal issue is not ripe.

This court affirms its prior ruling that violations of section 265 create unlawful status and therefore qualify for consideration under the "known to the government" standard. To the extent that case-by-case determinations might permit an INS adjudicator to rule that section 265 violations, as a matter of law, do not create unlawful status, this would allow legal error. Since the INS has applied this "litigation position" to actual cases in the past, the court finds the possibility of erroneous denial substantial enough to warrant summary judgment here. Therefore, the court grants plaintiffs' request for declaratory relief and holds that violations of section 265 create unlawful status for purposes of eligibility for legalization.[2]

However, the court shall not, at this time, grant plaintiffs' request for injunctive relief requiring the INS to process section 265 applications. Since the outcome of the *Ayuda* appeal and other litigation may affect the status of these applications, this court withholds entry of such an order. Therefore, the court retains jurisdiction over plaintiffs' first claim.

### D. Category 2 Applicants

■ In § 1255a(a)(2)(B), Congress described two classes of nonimmigrants eligible for legalization.

> [T]he alien must establish that the alien's period of authorized stay expired before such date *through the passage of time* or the alien's *unlawful status was known to the government* as of such date.

§ 1255a(a)(2)(B) (emphasis added). The INS has applied this distinction to applicants who violated duration of status ("D/s") visas, dividing them into two categories. The first category includes students admitted under an d/s F visa who

---

1. However, questions of fact concerning the INS's records of section 265 violations precluded summary judgment.

2. Plaintiffs in their Memorandum in Support of Summary Judgment explain in detail the INS's records and procedures. The INS does not dis-

pute plaintiffs' description, and as a result, the questions of fact which prevented summary judgment on this claim no longer exist. Instead, the controversy has shifted to whether the court may appropriately enter judgment and if so, what form that judgment should take.

remain in the United States after they graduate. In legalization wire number 26, the INS instructed its examiners to classify graduated students with F visas under the "passage of time" standard, exempting these applicants from proving their unlawful status was known to the government. *See* Legalization Wire Number 26, exhibit 20 to Plaintiffs' Memorandum in Support of Summary Judgment.

For those students who violated their d/s visas by not fulfilling some condition of the visa, failing to take the required number of class hours for example, the INS categorizes these applications under the "known to the government" standard. *See* 8 U.S.C. § 1255a(a)(2)(B); *Ayuda,* 687 F.Supp. at 666 (Supplemental Order). Plaintiffs contend that by judging these applications under the "known to the government" test, the INS imposes a greater quantum of proof on the applicants without a rational basis for doing so, and consequently violates the equal protection guarantee of the Fifth Amendment.

The INS acknowledges that it categorizes applicants under the "passage of time" and "known to the government" provisions, but denies that this distinction violates the equal protection guarantee. First, the INS contends that the distinction is rational given the language of § 1255a(a)(2)(B). Using again the example of a student with a d/s F visa, when the student enters the United States to study, the INS authorizes the student to stay lawfully in the United States for a definite period. This is the duration of the students lawful status. If the student stays beyond this period, the student's status becomes unlawful solely by the passage of time.

On the other hand, if the student fails to meet a condition of the visa, taking the required amount of course hours, the period of authorized stay has not expired—that period would end sometime after graduation. Instead, the student has created unlawful status before the duration of lawful status was scheduled to end. The INS contends that its discrimination between these two types of unlawful status merely follows the distinction drawn by Congress in IRCA.

Second, the INS argues that in practice, the standard of proof between the two categories does not differ, and only case-by-case adjudication within the agency will define the ultimate standards. The INS argues again that contrary to plaintiffs' allegations, it does not have a concrete policy to deny legalization to plaintiffs' subclass of applicants.

INS regulations clearly create two classes of applicants. In 8 CFR § 245a.2(b)(11)–(12), the INS singles out as eligible for legalization, nonimmigrants with duration of status visas in one of three classes: A (foreign government employees and family), G (representatives of international organizations and family), and F (students who have completed a full course of study). Nonimmigrants with H (temporary employees), L (intracompany transfers), and F visas who do not graduate are eligible for legalization under 8 CFR § 245a.2(b)(3), the "known to the government" standard. Congress in IRCA made no similar distinctions among types of visas.

The court finds that this distinction between applicants is not, as the INS contends, purely a matter of definition, but rather adds an additional element of proof for H, L and non-graduating F visa applicants. These applicants must prove not only that they violated the conditions of their visa, but also that the government had constructive or actual notice of their unlawful status. A non-graduating F visa applicant, for example, must document that,

> the said school forwarded to the [INS] a report that clearly indicated the applicant had violated his or her nonimmigrant student status prior to January 1, 1982. A school may submit an affirmation that the school did forward to the Service the aforementioned report and that the school no longer has copies of the actual documentation sent.

8 CFR § 245a.1(d)(4) (amended June 22, 1988).

In contrast, a graduated F visa applicant must prove that his or her authorized admission expired through the passage of time, not that the government had actual or constructive notice of the unlawful status. *See* 52 Fed.Reg. 43843, exhibit 2 to Plaintiffs' Memorandum in Reply; Legalization Wire # 26, *supra.* Moreover, A and G aliens,

> will be considered eligible ... if the qualifying employment terminated prior to January 1, 1982 or the Department of State acknowledges that the alien's A or G status recognition ceased prior to January 1, 1982 and the alien is otherwise eligible for legalization.

52 Fed.Reg. 43843.

The court finds that the INS has created an irrational distinction among legalization applicants. Prior to 1982, a d/s F visa had no specific expiration date—the visa was valid "for the duration of status in the United States as a student." 8 CFR § 214.2(f)(5) (1981). Graduation, like failing to attend school, ended the student's lawful status. Furthermore, the distinction between A, G, and graduated F visa applicants on the one hand, and H, L, and non-graduating F visa applicants makes no sense. The court finds no rational difference between a student who drops out of school and an embassy employee who quits work. Both have presumably violated a term of their visas, yet for the embassy employee, the INS considers the unlawful status to occur through the passage of time.

The court finds, accordingly, that the INS's irrational classification violates the equal protection guarantee. *See Sudomir v. McMahon,* 767 F.2d 1456, 1464 (9th Cir. 1985) (federal classifications valid unless wholly irrational). Since the court also finds no genuine issues of material fact concerning INS regulations, it grants summary judgment to plaintiffs on this issue. Furthermore, the court grants plaintiffs' request to create a rebuttable presumption that an applicant's violation of his or her

visa, regardless of type, was known to the government if at the time of the violation, INS regulations or policy required the applicant's school or employer to report the violation. With this presumption, the evidentiary burdens on all nonimmigrants, as well as the INS's ability to challenge an application, are equivalent.

*E.  Category 3 Applicants*

■ The dispute over this final category of applicants centers on a recent decision by the Legalization Appeals Unit ("LAU"), the final level of administrative appeals for legalization applicants, in *Matter of N. See* Exhibit A to Defendants' Memorandum in Opposition. Plaintiffs have alleged that the INS denies legalization to aliens who, by misrepresentation or mistake, are incorrectly reinstated to lawful status sometime after January 1, 1982. In *Matter of N,* the LAU ruled in favor of an applicant in plaintiffs' third category.

> [A]n alien who obtains reinstatement as a nonimmigrant subsequent to January 1, 1982, and who otherwise meets the continuous unlawful residence requirement, is eligible for temporary resident status if the reinstatement was obtained by the misrepresentation of material facts.

*Id.* The INS represents that this ruling[3] serves as precedent for future decisions by the LAU and therefore, the INS has no policy to deny legalization to applicants who were incorrectly reinstated to lawful status.

Plaintiffs assail the INS's position on two grounds: first, contrary to the INS's representations, the LAU and Regional Processing Facilities have not followed *Matter of N* as the law. Plaintiffs submit portions of eight INS denials which plaintiffs allege show the LAU's non-compliance. *See* Exhibit 5 to Plaintiffs' Supplemental Authorities. Second, *Matter of N* does nothing for those applicants previously denied.

---

**3.** The INS also submits *Matter of S* as a precedent decision. In *Matter of S,* the LAU concluded that since the applicant obtained an entry visa by fraud, her status subsequent to that

entry has been unlawful. *See Matter of S,* Attachment A to Defendants' Supplemental Authorities.

In its briefs, the INS appears to agree that *Matter of N* and *Matter of S* are correct and will serve as precedents. However, plaintiffs point to INS decisions which do not conform to these rulings as well as non-committal language in the INS's briefs. To resolve any ambiguity in the issue, this court rules as follows: *Matter of N* is the correct legal ruling. If an applicant, in unlawful status prior to January 1, 1982 obtains reinstatement to lawful status through fraud, misrepresentation, or mistake, the applicant nonetheless remained in an unlawful status. As the LAU stated in *Matter of S*, "admission is not lawful if it is regular only in form. The term 'lawfully' denotes compliance with substantive legal requirements, not merely procedural regularity." *Matter of S*, attachment A to Defendants' Supplemental Authorities.

The court also finds justification for requiring the INS to reopen category 3 cases denied prior to *Matter of N*. As with previous federal courts addressing the INS's legal errors, this court has both the jurisdiction and authority to order the reopening of erroneous denials. *See Ayuda v. Meese*, 687 F.Supp. 650, 668 (D.D.C.1988). Furthermore, the INS's proposed remedy for erroneous denials—*sua sponte* reopening—fails to guarantee adequate review. *See* 8 CFR § 103.5. Under INS regulations, an applicant or attorney cannot move for reconsideration, nor does the applicant have any right to review. Section 103.5 makes review purely discretionary and informal. This procedure is likely to prove incomprehensible to most denied applicants, many of whom do not have legal counsel.

Therefore, the court orders the INS to reopen all cases decided prior to and contrary to *Matter of N*. To expedite reopening, plaintiffs shall search their files for cases eligible for review and notify the INS of all cases which may comply.

### F. Ripeness and Standing [4]

■ The INS renews its arguments that the plaintiff organizations do not have standing to sue and that plaintiffs' claims are not ripe. As to standing, the court finds that even though the deadline for applications has passed, the plaintiff organizations must still expend time and money to guide applicants through the administrative process. Moreover, the failure of the INS to decide entire categories of cases (like section 265 violations) or to adopt a uniform policy perceptibly impairs the plaintiff organizations' goals and drains their resources. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, 102 S.Ct. 1114, 1124, 71 L.Ed.2d 214 (1982). The court finds no grounds to reconsider its earlier finding that plaintiffs have standing to sue.

■ The court also rejects the INS's contention that plaintiffs' claims are not ripe. As the court discusses above, INS policy is sufficiently concrete to permit ruling on the legality of INS policy and regulations. The court's ruling today only establishes legal standards which the INS must follow if it does not already do so. The court expresses no opinion on the ultimate eligibility of a particular applicant, but rather leaves case-by-case review of eligibility to the INS. Therefore, the INS's concern that this court's jurisdiction over plaintiffs' claims will interfere with the agency's statutory right to decide eligibility is unwarranted.

THEREFORE, plaintiffs' motion for summary judgment is GRANTED as to declaratory relief for applicants in categories 1–3. The INS is ordered to reopen all category 3 applications denied on grounds contrary to the legal ruling in *Matter of N*. The plaintiff organizations American G.I. Forum, United California Mexican American Association, African Community and Information Center, Chinese American Citizens Alliance, and the Coalition for Hu-

---

**4.** Defendants also seek dismissal for plaintiffs' failure to produce all discovery that defendants request. The court finds dismissal too harsh a sanction and denies defendants' motion. However, plaintiffs do not contest the dismissal of five plaintiff organizations: American G.I. Fo-

rum, United California Mexican American Association, African Community and Information Center, Chinese American Citizens Alliance, and the Coalition for Humane Immigration Reform of Los Angeles. Accordingly, the court DISMISSES these five plaintiff organizations.

mane Immigration Reform of Los Angeles are DISMISSED from this matter. Defendants' second motion to dismiss or in the alternative for summary judgment is DENIED.