**IMMIGRATION ASSISTANCE PROJECT OF THE LOS ANGELES COUNTY FEDERATION OF LABOR (AFL–CIO), et al., Plaintiffs,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants.**

No. C88–379R.

United States District Court,
W.D. Washington,
at Seattle.

June 3, 1989.

Robert H. Gibbs, Seattle, Wash., for plaintiffs.

Donald Keener, U.S. Dept. of Justice, Office of Immigration Litigation, Civ., Washington, D.C., for defendants.

## ORDER GRANTING IN PART AND DE- NYING IN PART PLAINTIFFS' MOTION TO AMEND JUDGMENT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on plaintiffs' motion to amend judgment. Having reviewed the motion, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. BACKGROUND

For the third time, this court reviews various challenges to the Immigration and Naturalization Service's ("INS") implementation of the Immigration Reform and Control Act of 1986 ("IRCA"), 8 U.S.C. § 1255a *et seq.* Plaintiffs, a group of organizations which assist documented and undocumented aliens, seek both declaratory and injunctive relief against the INS's administration of the legalization provisions of IRCA. On November 4, 1988, this court granted in part and denied in part the INS's motion to dismiss. *See* Order Granting In Part and Denying In Part Defen- dants' Motion to Dismiss ("first order"). The court dismissed plaintiffs' claim for an extension of the deadline for legalization applications under IRCA, as well as those claims decided in *Ayuda, et al. v. Meese et al.*, 687 F.Supp. 650 (D.D.C.1988) that the INS did not appeal.

In addition, since plaintiffs' amended complaint failed to allege that the individu- al named plaintiffs submitted timely appli- cations for legalization, the court ruled that these individual plaintiffs lacked standing. In a companion order, the court denied plaintiffs' motion for class certification. *See* Order Denying Plaintiffs' Motion for Provisional Class Certification ("certifica- tion order").

The court did not dismiss the suit, how- ever, ruling instead that the various orga- nizational plaintiffs had standing in their own right to seek relief from the INS's regulations and practices. On March 8, 1989, this court granted in part plaintiffs' motion for summary judgment and denied defendants' motion to dismiss. 709 F.Supp. 998 (W.D.Wash.1989). *See* Order Granting In Part Plaintiffs' Motion For Summary Judgment and Denying Defendants' Motion to Dismiss ("second order"). The court granted relief on three categories of legali- zation applications.

First, the court entered a declaratory judgment that a non-immigrant's violation of the address reporting requirement ("sec- tion 265 applicants") created unlawful sta- tus and therefore qualified the non-immi- grant for legalization under IRCA's "known to the government" standard. *See* 1255a(a)(2)(B). The court refused, how- ever, to order the INS to rule on section 265 applications. Currently, the INS is holding these applications in abeyance.

Second, the court held as irrational the INS's distinction between applicants with duration of status visa who qualified under the INS's "passage of time" standard and those who qualified under the "known to the government" standard. The court found that this distinction placed an addi- tion element of proof on certain applicants without a rational basis for doing so. Fi-

nally, third, the court ordered the INS to reopen all cases decided contrary to the Legalization Appeals Unit's ("LAU") decision in *Matter of N. See* Exhibit A to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment. On March 17, 1989, the parties in a telephone conference with the court decided that a trial was unnecessary in this matter.[1] Instead, plaintiffs obtained leave from the court to file a motion to clarify the court's judgment in its second order.[2] Plaintiffs now move for such an order clarifying this court's prior judgments.

## II. DISCUSSION

### A. ISSUES PREVIOUSLY DECIDED

Plaintiffs seek reconsideration of two prior rulings by the court. First, plaintiffs contend that the court should certify this case as a class action in order to avoid confusion over the scope of the court's orders and insure that those who should benefit from the court's rulings actually do so. In response, the INS argues that plaintiffs request for class certification was, and is, untimely, and furthermore, that certifying the class would require plaintiffs to amend their complaint and substantially change the character of this suit.

The court finds no grounds to reconsider its refusal to certify the class. The court denied plaintiffs' motion for two reasons: it was late under the local rules *and* plaintiffs failed to allege that the individual class representatives had filed timely applications for legalization. For this second reason, the court concluded that named plaintiffs' claims were not typical of those of the entire class.

Plaintiffs argue that their failure to move for class certification within 90 days was harmless error, far outweighed by the need to certify the class in order to grant nationwide relief. Plaintiffs note correctly that in most cases, violation of the local rule's 90-day time limit does not warrant dismissal of all class claims. *See Slanina v. William Penn Parking Corp.*, 106 F.R.D. 419 (W.D.Pa.1984). However, plaintiffs also failed to satisfy the requirement of typicality under Fed.R.Civ.P. 23, and absent yet another amended complaint and subsequent discovery by defendants, plaintiffs cannot remedy this defect. The court finds that certifying a class, with the necessary prerequisite of discovery and subsequent motions, would unduly complicate this action with no appreciable benefits.

 The court concludes further that the injunctive relief discussed below is sufficiently clear both in scope and application to make class certification unnecessary. The Ninth Circuit, in *Bresgal v. Brock*, 843 F.2d 1163, 1170 (9th Cir.1987), recently approved an injunction against a federal agency, there the Department of Labor, that affected enforcement of a federal program nationwide.

> Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown. On the other hand, an injunction is not necessarily made overbroad by extending benefit or protection to persons other than prevailing parties in the lawsuit—even if it is not a class action—*if such breadth is necessary to give prevailing parties the relief to which they are entitled.*

---

1. The INS, for reasons that are unclear to the court, object to the use of "admitted facts" contained in the parties' pretrial order. The INS argues that it agreed to these facts only for the purposes of trial, not summary judgment. Plaintiffs, on the other hand, seek to have the admitted facts made part of the record. The court finds that the admitted facts are just that—facts that both parties agree are true. Had the INS intended not to contest these facts at trial, it should have entered them in the pretrial order as facts not admitted but not contested. The court sees no reason, however, to allow either party to contest facts which they have previously admitted to the court as true.

2. The INS characterizes plaintiffs' motion as a motion to amend judgment under Fed.R.Civ.P. 59, and argues that it is untimely under the 10-day time limit. The court is unpersuaded. Rule 59 applies after the court enters final judgment on particular claims, something which has not yet happened here. *See* Fed.R.Civ.P. 54(b). Furthermore, plaintiffs did obtain leave within 10 days of entry of the court's second order to file the present motion to amend judgment.

*Bresgal v. Brock,* 843 F.2d at 1170 (emphasis original). So long as the agency is a party to the suit, as the INS is here, a district court may enjoin a federal agency and in effect order nationwide compliance if such injunctive relief is both appropriate and necessary. *Bresgal,* 843 F.2d at 1171 (district court has power to order nationwide relief when it is required). Thus, this court need not certify plaintiffs' class to accomplish the same end.

· Next, plaintiffs seek reconsideration of this court's decision not to extend the deadline for legalization applications and request the court to retain jurisdiction to consider relief for potential applicants deterred by the INS. *See* First Order at 15–16. In its first order, the court concluded that it had no authority either at law or in equity to extend the limit for filing applications, citing the United States Supreme Court's opinion in *INS v. Pangilinan,* 486 U.S. 875, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988). Plaintiffs contend that a recent decision from the D.C.Circuit as well as pending appeals in the Ninth Circuit, justify this court retaining jurisdiction over claims that the INS denied applicants a reasonable opportunity to file for legalization or that an applicant "constructively filed" an application. *See In re Thornburgh,* 869 F.2d 1503, 1516 (D.C.Cir.1989).

Plaintiffs' argument has two strands: first, plaintiffs directly challenge the court's earlier ruling that *Pangilinan* curbs any consideration of late applications. On this point the court shall not alter its prior decision. Although *In re Thornburgh* supports plaintiffs' assertions, the D.C.Circuit issued that opinion on a writ of mandamus, concluding that Judge Sporkin's appointment of a Special Master in *Ayuda* was not illegal. *See In re Thornburgh,* 869 F.2d at 1505.

■ Thus, the case has limited bearing here, where the issue has always been whether potential applicants have a legal right to relief. Given that IRCA expressly prohibits review of late filings and that the Supreme Court in *Pangilinan* prohibited the use of estoppel or equitable powers to extend application deadlines, the court finds no grounds to reconsider its earlier ruling. *See* 8 U.S.C. § 1255a(f)(2); *Agcaoili v. Gustafson,* 870 F.2d 462, 464 (9th Cir.1989) (*Pangilinan* foreclosed all claims for naturalization). This court has no authority to extend the period for applications under IRCA.

The court also rejects the second strand to plaintiffs' argument. Plaintiffs contend that relief other than acceptance of late applications may be available and that the court should retain jurisdiction to consider these alternate forms of relief. *See In re Thornburgh,* 869 F.2d at 1517 (Special Masters in *Ayuda* appointed to study lesser forms of relief). Yet plaintiffs do not make specific requests, but rather ask the court to retain jurisdiction in case alternate forms of relief appear in the future. The court is unwilling to retain jurisdiction on such speculative grounds and therefore denies plaintiffs' request.

## B. CATEGORY 1 APPLICANTS—SECTION 265

■ Plaintiffs seek relief for section 265 applicants additional to the court's declaratory judgment in their favor. First, plaintiffs request that the court require the INS to adjudicate these applications within three months. Second, if it is unable to process an application within three months, the INS, according to plaintiffs, should notify the applicant of this court's ruling as well as grant extended work authorization, broader travel permits, and deferred deportation of spouses and children under the family fairness policy. Finally, plaintiffs seek to define more clearly the burden of proof for this category of applicants.

The court once again refuses to order the INS to adjudicate these applications within three months. *See* Second Order at 5. The court is reluctant to interfere with the INS's timing of agency review. Instead, the court has attempted to structure its orders to clarify the legal standards for legalization, while leaving case-by-case adjudication to the INS. As the Ninth Circuit held in similar circumstances,

an injunction against a government agency must be structured to take account

the well-established rule that the government has traditionally been granted the widest latitude in the dispatch of its own internal affairs ... The manner in which the Secretary implements the court's order to enforce the Act is, in the first instance, a matter of agency discretion.

*Bresgal,* 843 F.2d at 1171. Therefore, the court affirms its earlier decision not to order the INS to process these applications.

The court agrees, however, that some form of notice is necessary for this category of applicants, if the INS is unable to adjudicate these cases. If the INS holds an application in abeyance for more than 90 days from the entry of this order, it must notify the applicant of: (1) this court's ruling that section 265 violations may qualify the applicant for legalization, (2) the change of address procedure and its importance, along with a change of address card, (3) the existence of and application procedures for both the family fairness policy and the provisions for travel abroad, and (4) the nearest INS office that renews work authorization forms.

Although plaintiffs request more liberal treatment for section 265 applicants, particularly for travel, work authorization, and family fairness benefits, the court concurs with the INS that this additional relief goes beyond the scope of this suit. Furthermore, plaintiffs raise these issues for the first time and the court shall not grant such special treatment solely on the record as it stands—incomplete and inconclusive.

Finally, plaintiffs request the court to clarify the burdens of proof for section 265 applicants. As discussed in the first and second orders, an applicant must prove that "documentation existed in one or more government agencies so that ... such documentation taken as a whole would warrant the finding that the nonimmigrant alien's status in the United States was unlawful." *Ayuda,* 687 F.Supp. at 666; First Order at 4; Second Order at 6. IRCA requires the applicant to prove eligibility for legalization, and therefore, the burden

of persuasion on this point always rests with the section 265 applicant.

However, given the nature of a section 265 violation—the nonimmigrant failed to report his or her address to the INS—an applicant could rarely if ever provide conclusive evidence that the INS "knew" of the violation. That information is with the INS. Thus, the burden of proof at some point should shift to the INS, namely that the INS had no knowledge of the alleged violation. The burden of proof shifts as follows: an applicant must make a prima facie showing that he or she violated the address reporting requirements either by failing to report the address or submitting a false address.

Once the applicant makes such a showing, the INS then has the burden of coming forward with proof that the alleged violation and subsequent unlawful status was not known to the government.[3] If the INS does come forward with such evidence, the applicant must then show by a preponderance of the evidence that he or she was in unlawful status and that this unlawful status was known to the government. At all times, the applicant carries the burden of persuasion to prove eligibility for legalization.

## C. CATEGORY 2—VIOLATIONS OF DURATION OF STATUS VISAS

Plaintiffs request the court to apply retroactively its declaratory judgment on this category of applications, specifically to require the INS to reopen all denials of F, H, and L-visa applications within 90 days. In its second order, the court invalidated the INS's policy of treating these applicants differently, but did not discuss the scope of its ruling. *See* Second Order at 6. After considering the merits of retroactive relief, the court concludes that its ruling shall not apply retroactively to this category of applicants. The INS's former policy did not preclude legalization, but rather created a presumption in favor of applicants holding certain types of visas. The court finds that prospective relief—invalidating the distinction between types of vi-

---

**3.** In effect, credible evidence of a violation of section 265 prior to 1982 creates a rebuttable

presumption that the INS knew of the violation.

sas—redresses the harm that plaintiffs have proven.[4]

Plaintiffs also ask that the court to refine the burden of proof for category 2 applicants. The court will do so in the same manner as it did for applicants in category 1. Applicants in category 2 must make a prima facie showing that they violated the terms of their duration of status visa. Once this is shown, the INS then has the burden to come forward with evidence either that unlawful status did not occur through the passage of time or that the unlawful status was not known to the government. If the INS comes forward with this evidence, the applicants must show by a preponderance of the evidence that they are eligible for legalization under either the "passage of time" or "known to the government" standards. The applicants always have the burden of persuasion on this point.

### D. CATEGORY 3—REOPENED CASES

Plaintiffs request special consideration for category 3 applicants as for those in category 1: more liberal travel provisions, work authorization, and family fairness benefits as well as notice of the court's orders and available benefits. The court rules that if the INS fails to reopen category 3 denials within 90 days, it shall provide to applicants the notice set forth *supra*.

### E. RETAINING JURISDICTION

To ensure compliance with its orders, the court shall retain jurisdiction over this matter for six months. After that, the court will entertain a motion for entry of final judgment on plaintiffs' claims if the parties satisfy the terms of the court's orders.

THEREFORE, plaintiffs' motion to amend judgment is GRANTED IN PART and DENIED IN PART.

---

4. As a result, the court does not reach the issue of paroling denied applicants back into the United States for rehearings.